## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | C.A. No.  07-346 SLR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MECHANICAL INTEGRITY, INC., | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFF E. I. DU PONT DE NEMOURS AND COMPANY'S
### MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiff E.I. du Pont de Nemours and Company ("DuPont") hereby moves, pursuant to

Federal Rule of Civil Procedure 15, for an order allowing DuPont leave to file an amended

complaint in the form attached hereto as Exhibit A.  The grounds for this motion are as follows:

1.    DuPont seeks to amend its complaint to add additional claims of breach of

contract and fraud arising from Defendant Mechanical Integrity, Inc.'s ("MI") recently disclosed

decision to subcontract the work under the parties' contract to another company, NDT.  The

parties' contract forbids MI from subcontracting without DuPont's written permission.  DuPont

gave no such permission and, indeed, did not even know of NDT's involvement until MI filed its

proposed Third Party Complaint.

2.    In accordance with Local Rule 15.1, DuPont has attached the following

documents: (i) DuPont's Amended Complaint (Exhibit A), and (ii) a black-lined comparison of

the Amended Complaint to the original Complaint that indicates the differences between the

documents by bracketing material deleted from and underlining material added to the Original Complaint (Exhibit B).

3.      Leave to amend is freely granted absent delay accompanied by prejudice, bad faith, dilatory motive, or futility. Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). There has been no delay in seeking this amendment because DuPont has only recently discovered the evidence that gives rise to its new claims, when MI filed its motion for leave to file a third party complaint. After that motion was filed, DuPont conducted a review of the parties' contract and filed this motion within the November 2, 2007 deadline set by the Court for the amendment of pleadings. The Amended Complaint is filed in good faith. There can be no undue prejudice to MI by the amendment because the parties have barely begun fact discovery, with over four months until fact discovery closes. The new claims are well supported and, indeed, are based upon MI's own allegations in its third party complaint against NDT.

4.      Accordingly, DuPont respectfully requests that leave be granted to file the proposed Amended Complaint. A proposed form of order is being filed simultaneously herewith.

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Kathleen Furey McDonough (I.D. # 2395)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19801
Telephone: (302) 984-6000

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company*

Dated: November 2, 2007
828377/20120-435

2

## CERTIFICATE OF SERVICE

I, Sarah Elizabeth DiLuzio, hereby certify this 2nd day of November, 2007, that the foregoing **MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) and two (2) true and correct copies were sent via U.S. Mail to the following:

> Louis J. Rizzo, Jr., Esquire
> Reger Rizzo Kavulich & Darnall LLP
> 1001 Jefferson Plaza
> Suite 202
> Wilmington, DE 19801

> Sarah Elizabeth DiLuzio (Del. Bar #4085)
> Potter Anderson & Corroon, LLP
> Hercules Plaza, Sixth Floor
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, DE 19899
> (302) 984-6042 (Telephone)
> (302) 658-1192 (Facsimile)
> sdiluzio@potteranderson.com (Email)

828377

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-346 SLR |
| v. | ) ) | Jury Trial Demanded |
| MECHANICAL INTEGRITY, INC., | ) ) | |
| Defendant. | ) ) | |

### AMENDED COMPLAINT

Plaintiff E. I. du Pont de Nemours and Company ("DuPont"), as and for its amended complaint against Defendant Mechanical Integrity Inc. ("MI" or "Defendant"), alleges as follows:

### Nature of the Action

1.     This is an action for breach of contract, misrepresentation and fraud, based upon a March 2004 contract between DuPont and MI.  Pursuant to that contract, Defendant MI was required to perform an inspection of approximately 3,600 feet of pipeline used to carry chloroform to DuPont's Louisville, Kentucky facility.  Due to MI's failure to properly conduct the inspection, a serious leak in the pipeline caused a chloroform leak and DuPont was forced to expend over $2,000,000.00 to remediate the area where the leak occurred.

### The Parties

2.     Plaintiff DuPont is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19898.

3.     Defendant MI is a Texas corporation with its principal place of business located at 1423 First Street, Suite A, Humble, Texas 77338.

<u>Jurisdiction And Venue</u>

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332, because diversity of citizenship exists between the plaintiff and defendant, and the

damages DuPont has sustained exceed $75,000.

5.      The Court has personal jurisdiction over the defendant pursuant to 10 *Del. C.* §

3104, because the parties' contract contains a provision whereby MI consented and submitted

exclusively to the jurisdiction and service of process of the courts of the State of Delaware or the

courts of the United States located in Delaware. (Ex. A ¶ 39).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because the

defendant is subject to personal jurisdiction in this District.

<u>Facts</u>

7.      DuPont's Plant in Louisville Kentucky manufactures neoprene, or synthetic

rubber, as well as ozone-safe, non-chlorofluorocarbon substitutes such as Suva® refrigerants and

Dymel® propellants.

8.      On or about February 2, 2004, DuPont and MI entered into a contract, Purchase

Order No. 4500104098, whereby MI agreed to perform a "guided wave" ultrasonic inspection on

a four-inch diameter chloroform pipeline supplying the Louisville Plant. (P.O. No. 4500104098

is attached hereto as Exhibit A.) The Purchase Order expressly attached and incorporated

DuPont's General Conditions. (Ex. A.) Together, the Purchase Order and the General

Conditions comprise the contract between DuPont and MI (the "Contract").

9.     The pipeline which was to be inspected is approximately 3,600 feet long and is used to transport chloroform, a potentially environmentally hazardous material, from a contracted storage facility to the Louisville Plant.

10.    A portion of the pipeline traverses an adjacent site owned by Rohm and Haas Company, where it is routed under several road and railroad track crossings. Because these crossings prevent conventional inspection protocols from being used to assess the pipeline's condition, DuPont contracted with MI to utilize long-range ultrasonic technology as a screening tool to locate and characterize any defects in the pipeline.

11.    MI was aware that one of the purposes of the inspection was for DuPont to identify repair work that needed to be performed on the pipeline during the scheduled Louisville Plant shutdown in April 2004.

12.    MI conducted its inspection from March 31 through April 1, 2004, and was paid $13,429.97 by DuPont for these services.

13.    Following its inspection, MI issued an Inspection Report detailing its findings. (The "Report" which is attached as Ex. B.) The Report divided the pipeline into fifteen sections for purposes of the inspection and placed each section into one of three categories. A designation of Category 1 meant that the pipeline had less than 20% wall loss; Category 2 meant there was 20% to 50% wall loss, and Category 3 meant greater than 50% wall loss. Eleven of the sections were deemed by MI to fall into Category 1 and showed "no significant areas of concern"; four sections were deemed by MI to be Category 2 with "minor indications" of wall loss on the pipeline, and no section was designated by MI as being so deteriorated as to fall into Category 3.

14.    In reliance on MI's Inspection Report, in April 2004 DuPont repaired two of the areas of the pipeline that MI had designated as "Category 2," which showed some evidence of corrosion.

15.    On November 3, 2005, DuPont entered into another contract with MI, Purchase Order No. 4500405916, to perform a follow-up inspection of the pipeline. (Purchase Order No. 4500405916 is attached as Ex. C.) That inspection was scheduled to take place November 17-19, 2005.

16.    On November 18, 2005, a chloroform leak was discovered on a section of the pipeline that was previously inspected by MI and/or which MI reported to be within Category 1 and having "no significant areas of concern." The leak was found beneath a road crossing on the Rohm and Haas site.

17.    Because chloroform is a toxic material, as soon as the leak was observed, DuPont immediately initiated emergency response procedures and shut down the Louisville Plant's operations in an attempt to mitigate the leak. Despite DuPont's swift response, contamination of the soil and surface water could not be prevented.

18.    As a result of the chloroform leak, DuPont had to expend over $2,029,462.21 to remediate the soil and surface water adjacent to the spill location, as well as repair the pipeline.

19.    The external condition of the pipeline was so deteriorated that the corrosion of the pipe wall had to have been present, in a substantial degree, in March of 2004. Thus, MI's 2004 Inspection Report misrepresented the integrity of that section of the pipeline.

20.    When confronted with this discrepancy, MI admitted that, contrary to its Inspection Report, it did not inspect the area of the pipe where the leak occurred.

21.     Had MI properly inspected the area of the pipeline where the leak occurred, and reported its deteriorated condition to DuPont, DuPont would have immediately repaired the pipe, as was done with the pipe sections designated as Category 2. Thus, the chloroform leak would have been avoided.

22.     MI's failure to adequately inspect the pipeline and/or truthfully report its conduct to DuPont directly caused to the failure of the pipe wall and the resultant leak of chloroform.

## COUNT I:  BREACH OF CONTRACT
## (PERFORMANCE)

23.     DuPont repeats and realleges paragraphs 1 through 22 above as if fully set forth herein.

24.     Defendant MI is bound by the terms of the Contract, which required it to inspect all 3,600 feet of the pipeline specifically identified in the Contract, and accurately report its findings.

25.     MI breached its obligation by failing to adequately inspect the area of the pipeline where the leak occurred, and/or by reporting, inaccurately, that the pipe was in good condition at that location.

26.     As a result of MI's breach of the terms of the Contract, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT II:  FRAUD
## (Pled in the Alternative)

27.     DuPont repeats and realleges paragraphs 1 through 26 above as if fully set forth herein.

28.     By virtue of the parties' Contract, MI had a duty to truthfully disclose the scope and results of its inspection of the pipeline.

29.    MI's Inspection Report falsely represented the condition of the pipeline where the leak occurred or, at the very least, omitted the fact that MI did not properly inspect the subject area of the pipeline.

30.    MI knew that the misrepresentations contained in the Inspection Report were false, and/or made the misrepresentation with reckless indifference to its truth.

31.    MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline and, by issuing a false Inspection Report, MI intended to induce DuPont to refrain from conducting all necessary repairs.

32.    DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

33.    As a result of its reliance on the false report, DuPont has suffered damages in excess of $2,000,000.00.

### COUNT III:  INTENTIONAL MISREPRESENTATION
### (Pled in the Alternative)

34.    DuPont repeats and realleges paragraphs 1 through 33 above as if fully set forth herein.

35.    MI deliberately concealed the fact that it did not inspect the area of the pipeline where the leak occurred and/or failed to accurately report the condition of the pipeline, despite its obligation to do so.

36.    The condition of the pipeline at all points along the 3,600 foot corridor was material, and, indeed, constituted the sole purpose of the parties' contract.

37.    MI acted with scienter because it knew that its Inspection Report contained false information about the integrity of the pipeline.

38.     MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline.  By issuing a false Inspection Report, MI intended to induce DuPont to refrain from conducting all necessary repairs.

39.     DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

40.     As a result of MI's concealment, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT IV:  NEGLIGENT MISREPRESENTATION
### (Pled in the Alternative)

41.     DuPont repeats and realleges paragraphs 1 through 40 above as if fully set forth herein.

42.     By virtue of the parties' Contract, MI had a duty to truthfully disclose the scope and results of its inspection of the pipeline.

43.     MI's Inspection Report falsely represented the condition of the pipeline where the leak occurred or, at the very least, omitted the fact that MI did not properly inspect the subject area of the pipeline.

44.     MI failed to exercise reasonable care in conducting its inspection and in communicating the results of its inspection to DuPont.

45.     MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline.

46.     DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

47.     As a result of its justifiable reliance on the false report, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT V:    BREACH OF CONTRACT
## (SUBCONTRACTING)

48.    DuPont repeats and realleges paragraphs 1 through 47 above as if fully set forth herein.

49.    On October 1, 2007, MI filed a motion for leave to file a third party complaint against Mike Walker ("Walker") and NDT Equipment Services LTD ("NDT"). MI claims that it subcontracted with Mr. Walker and NDT to inspect the pipeline at DuPont's Louisville, Kentucky facility.

50.    MI's third party complaint implies that Walker and/or NDT inspected the pipeline at DuPont's Louisville, Kentucky site.

51.    MI's third party complaint further alleges that it was "Walker and/or NDT" who drafted the 2004 Inspection Report upon which DuPont detrimentally relied.

52.    MI's motion for leave to file a third party complaint, and the proposed third party complaint attached thereto, is the first notice DuPont ever received that anyone other than employees of MI conducted the March 2004 inspection or drafted the Inspection Report.

53.    MI's motion for leave to file a third party complaint, and the proposed third party complaint attached thereto, is the first time DuPont learned of NDT's involvement.

54.    MI consistently represented to DuPont that Walker, who was one of the individuals who conducted the March 2004 inspection, was an employee of MI.

55.    In its Initial Disclosures pursuant to Civil Rule 26(a)(1), MI identified "Mike Walker" as an employee of MI.

56.    The 2004 Inspection Report is on MI's letterhead and, although it identifies Mike Walker as the drafter, it does not mention NDT or the fact that Walker is not employed by MI.

8

57.    The parties' Contract strictly forbids MI from subcontracting the work it was hired by DuPont to perform without DuPont's prior written consent. *See* Ex. A hereto, Para. 8 of General Site Conditions.

58.    MI did not seek DuPont's consent before, or after, it subcontracted its obligations under the Contract to Walker and NDT.

59.    At no time did DuPont consent to MI's decision to subcontract its obligations under the parties' Contract.

60.    MI's unilateral decision to subcontract the performance of its obligations under the parties' Contract constitutes an independent breach of that Contract.

61.    As a result of MI's breach of the terms of the Contract, DuPont has suffered additional damages to be determined at trial.

### COUNT VI:  FRAUD
### (SUBCONTRACTING)

62.    DuPont repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.    By virtue of the parties' Contract, MI had a duty to disclose, and seek prior written consent for, its decision to subcontract its inspection obligations to Walker and NDT.

64.    MI falsely and affirmatively represented that Walker was an MI employee while knowing that representation to be false.

65.    MI falsely and affirmatively represented that it performed the pipeline inspection, while knowing that representation to be false.

66.    MI falsely and affirmatively represented that it drafted the Inspection Report, while knowing that representation to be false.

9

67.    MI was aware that DuPont would rely upon its misrepresentation that Walker was a MI employee and/or that it performed the inspection and/or that it drafted the Inspection Report, and, by failing to disclose the truth, MI intended to induce DuPont to refrain from objecting to the subcontracting arrangement.

68.    Had DuPont known that MI would subcontract the inspection and/or drafting of the Inspection Report to NDT and/or Mike Walker, DuPont would not have retained MI.

69.    As a result of its reliance on MI's fraud, DuPont has suffered additional damages to be determined at trial.

## COUNT VII: FRAUD
## (DEPRIVING DUPONT OF A REMEDY)

70.    DuPont repeats and realleges paragraphs 1 through 69 above as if fully set forth herein.

71.    DuPont acted in justifiable reliance on MI's fraud by filing this lawsuit against MI alone.

72.    Had DuPont known of NDT's involvement, it would have named NDT and Mike Walker, individually, as defendants in this lawsuit as well.

73.    MI's fraud has potentially deprived DuPont of recovery against NDT and/or Walker for their part in the inspection and Inspection Report.

74.    As a result of its reliance on MI's fraud, DuPont has suffered additional damages to be determined at trial.

## PRAYER FOR RELIEF

DuPont respectfully requests that this Court enter judgment in favor of DuPont, as follows:

      (a)    against defendant MI for damages in the amount of at least $2,029,462.21;

      (b)    against defendant MI for pre- and post-judgment interest on the sum of all damages awarded to DuPont against the defendant;

      (c)    against defendant MI for punitive damages based on its reckless and/or intentional conduct in performing an inadequate inspection and issuing an inaccurate Inspection Report;

      (d)    against defendant MI for punitive damages based on its fraudulent conduct in surreptitiously subcontracting its obligations under the Contract and continuing to misrepresent that Walker was an employee of MI;

      (e)    against defendant MI for the fees and costs incurred in asserting this action, including attorneys' fees; and

      (f)    such other and further relief the Court may deem just and proper.

POTTER ANDERSON & CORROON LLP

By: _Sarah S. DiLuzio_

Kathleen Furey McDonough (I.D. # 2395)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19801
Telephone: (302) 984-6000

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company*

Dated: November 2, 2007
824992v2/20120-435

11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) | |
| | ) | C.A. No. ————07-346 SLR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Jury Trial Demanded |
| MECHANICAL INTEGRITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

AMENDED COMPLAINT

Plaintiff E. I. du Pont de Nemours and Company ("DuPont"), as and for its **amended**

complaint against Defendant Mechanical Integrity Inc. ("MI" or "Defendant"), alleges as

follows:

Nature of the Action

1.      This is an action for breach of contract, misrepresentation and fraud, based upon a

March 2004 contract between DuPont and MI.  Pursuant to that contract, Defendant MI was

required to perform an inspection of approximately 3,600 feet of pipeline used to carry

chloroform to DuPont's Louisville, Kentucky facility.  Due to MI's failure to properly conduct

the inspection, a serious leak in the pipeline caused a chloroform leak and DuPont was forced to

expend over $2,000,000.00 to remediate the area where the leak occurred.

The Parties

2.      Plaintiff DuPont is a Delaware corporation with its principal place of business

located at 1007 Market Street, Wilmington, Delaware 19898.

3.      Defendant MI is a Texas corporation with its principal place of business located at

1423 First Street, Suite A, Humble, Texas 77338.

## Jurisdiction And Venue

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because diversity of citizenship exists between the plaintiff and defendant, and the damages DuPont has sustained exceed $75,000.

5.    The Court has personal jurisdiction over the defendant pursuant to 10 *Del. C.* § 3104, because the parties' contract contains a provision whereby MI consented and submitted exclusively to the jurisdiction and service of process of the courts of the State of Delaware or the courts of the United States located in Delaware. (Ex. A ¶ 39).

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because the defendant is subject to personal jurisdiction in this District.

## Facts

7.    DuPont's Plant in Louisville Kentucky manufactures neoprene, or synthetic rubber, as well as ozone-safe, non-chlorofluorocarbon substitutes such as Suva® refrigerants and Dymel® propellants.

8.    On or about February 2, 2004, DuPont and MI entered into a contract, Purchase Order No. 4500104098, whereby MI agreed to perform a "guided wave" ultrasonic inspection on a four-inch diameter chloroform pipeline supplying the Louisville Plant. (P.O. No. 4500104098 is attached hereto as Exhibit A.) The Purchase Order expressly attached and incorporated DuPont's General Conditions. (Ex. A.) Together, the Purchase Order and the General Conditions comprise the contract between DuPont and MI (the "Contract").

9.     The pipeline which was to be inspected is approximately 3,600 feet long and is used to transport chloroform, a potentially environmentally hazardous material, from a contracted storage facility to the Louisville Plant.

10.     A portion of the pipeline traverses an adjacent site owned by Rohm and Haas Company, where it is routed under several road and railroad track crossings. Because these crossings prevent conventional inspection protocols from being used to assess the pipeline's condition, DuPont contracted with MI to utilize long-range ultrasonic technology as a screening tool to locate and characterize any defects in the pipeline.

11.     MI was aware that one of the purposes of the inspection was for DuPont to identify repair work that needed to be performed on the pipeline during the scheduled Louisville Plant shutdown in April 2004.

12.     MI conducted its inspection from March 31 through April 1, 2004, and was paid $13,429.97 by DuPont for these services.

13.     Following its inspection, MI issued an Inspection Report detailing its findings. (The "Report" which is attached as Ex. B.) The Report divided the pipeline into fifteen sections for purposes of the inspection and placed each section into one of three categories. A designation of Category 1 meant that the pipeline had less than 20% wall loss; Category 2 meant there was 20% to 50% wall loss, and Category 3 meant greater than 50% wall loss. Eleven of the sections were deemed by MI to fall into Category 1 and showed "no significant areas of concern"; four sections were deemed by MI to be Category 2 with "minor indications" of wall loss on the pipeline, and no section was designated by MI as being so deteriorated as to fall into Category 3.

14.    In reliance on MI's Inspection Report, in April 2004 DuPont repaired two of the areas of the pipeline that MI had designated as "Category 2," which showed some evidence of corrosion.

15.    On November 3, 2005, DuPont entered into another contract with MI, Purchase Order No. 4500405916, to perform a follow-up inspection of the pipeline.  (Purchase Order No. 4500405916 is attached as Ex. C.)  That inspection was scheduled to take place November 17-19, 2005.

16.    On November 18, 2005, a chloroform leak was discovered on a section of the pipeline that was previously inspected by MI and/or which MI reported to be within Category 1 and having "no significant areas of concern."  The leak was found beneath a road crossing on the Rohm and Haas site.

17.    Because chloroform is a toxic material, as soon as the leak was observed, DuPont immediately initiated emergency response procedures and shut down the Louisville Plant's operations in an attempt to mitigate the leak.  Despite DuPont's swift response, contamination of the soil and surface water could not be prevented.

18.    As a result of the chloroform leak, DuPont had to expend over $2,029,462.21 to remediate the soil and surface water adjacent to the spill location, as well as repair the pipeline.

19.    The external condition of the pipeline was so deteriorated that the corrosion of the pipe wall had to have been present, in a substantial degree, in March of 2004.  Thus, MI's 2004 Inspection Report misrepresented the integrity of that section of the pipeline.

20.    When confronted with this discrepancy, MI admitted that, contrary to its Inspection Report, it did not inspect the area of the pipe where the leak occurred.

21.    Had MI properly inspected the area of the pipeline where the leak occurred, and reported its deteriorated condition to DuPont, DuPont would have immediately repaired the pipe, as was done with the pipe sections designated as Category 2. Thus, the chloroform leak would have been avoided.

22.    MI's failure to adequately inspect the pipeline and/or truthfully report its conduct to DuPont directly caused to the failure of the pipe wall and the resultant leak of chloroform.

## COUNT I:  BREACH OF CONTRACT
### (PERFORMANCE)

23.    DuPont repeats and realleges paragraphs 1 through 22 above as if fully set forth herein.

24.    Defendant MI is bound by the terms of the Contract, which required it to inspect all 3,600 feet of the pipeline specifically identified in the Contract, and accurately report its findings.

25.    MI breached its obligation by failing to adequately inspect the area of the pipeline where the leak occurred, and/or by reporting, inaccurately, that the pipe was in good condition at that location.

26.    As a result of MI's breach of the terms of the Contract, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT II:  FRAUD
### (Pled in the Alternative)

27.    DuPont repeats and realleges paragraphs 1 through 26 above as if fully set forth herein.

28.    By virtue of the parties' Contract, MI had a duty to truthfully disclose the scope and results of its inspection of the pipeline.

29.    MI's Inspection Report falsely represented the condition of the pipeline where the leak occurred or, at the very least, omitted the fact that MI did not properly inspect the subject area of the pipeline.

30.    MI knew that the misrepresentations contained in the Inspection Report were false, and/or made the misrepresentation with reckless indifference to its truth.

31.    MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline and, by issuing a false Inspection Report, MI intended to induce DuPont to refrain from conducting all necessary repairs.

32.    DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

33.    As a result of its reliance on the false report, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT III:  INTENTIONAL MISREPRESENTATION
### (Pled in the Alternative)

34.    DuPont repeats and realleges paragraphs 1 through 33 above as if fully set forth herein.

35.    MI deliberately concealed the fact that it did not inspect the area of the pipeline where the leak occurred and/or failed to accurately report the condition of the pipeline, despite its obligation to do so.

36.    The condition of the pipeline at all points along the 3,600 foot corridor was material, and, indeed, constituted the sole purpose of the parties' contract.

37.    MI acted with scienter because it knew that its Inspection Report contained false information about the integrity of the pipeline.

38.    MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline.  By issuing a false Inspection Report, MI intended to induce DuPont to refrain from conducting all necessary repairs.

39.    DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

40.    As a result of MI's concealment, DuPont has suffered damages in excess of $2,000,000.00.

## COUNT IV:  NEGLIGENT MISREPRESENTATION
### (Pled in the Alternative)

41.    DuPont repeats and realleges paragraphs 1 through 40 above as if fully set forth herein.

42.    By virtue of the parties' Contract, MI had a duty to truthfully disclose the scope and results of its inspection of the pipeline.

43.    MI's Inspection Report falsely represented the condition of the pipeline where the leak occurred or, at the very least, omitted the fact that MI did not properly inspect the subject area of the pipeline.

44.    MI failed to exercise reasonable care in conducting its inspection and in communicating the results of its inspection to DuPont.

45.    MI was aware that DuPont intended to rely upon the Inspection Report to identify repairs to the pipeline.

46.    DuPont acted in justifiable reliance on the representations contained in the Inspection Report.

47.    As a result of its justifiable reliance on the false report, DuPont has suffered damages in excess of $2,000,000.00.

7    DeltaView comparison of PowerDocs://PAC/790808/4 and PowerDocs://PAC/824992/2. Performed on 11/2/2007.

## COUNT V:    BREACH OF CONTRACT
## (SUBCONTRACTING)

48. DuPont repeats and realleges paragraphs 1 through 47 above as if fully set forth herein.

49. On October 1, 2007, MI filed a motion for leave to file a third party complaint against Mike Walker ("Walker") and NDT Equipment Services LTD ("NDT"). MI claims that it subcontracted with Mr. Walker and NDT to inspect the pipeline at DuPont's Louisville, Kentucky facility.

50. MI's third party complaint implies that Walker and/or NDT inspected the pipeline at DuPont's Louisville, Kentucky site.

51. MI's third party complaint further alleges that it was "Walker and/or NDT" who drafted the 2004 Inspection Report upon which DuPont detrimentally relied.

52. MI's motion for leave to file a third party complaint, and the proposed third party complaint attached thereto, is the first notice DuPont ever received that anyone other than employees of MI conducted the March 2004 inspection or drafted the Inspection Report.

53. MI's motion for leave to file a third party complaint, and the proposed third party complaint attached thereto, is the first time DuPont learned of NDT's involvement.

54. MI consistently represented to DuPont that Walker, who was one of the individuals who conducted the March 2004 inspection, was an employee of MI.

55. In its Initial Disclosures pursuant to Civil Rule 26(a)(1), MI identified "Mike Walker" as an employee of MI.

56. The 2004 Inspection Report is on MI's letterhead and, although it identifies Mike Walker as the drafter, it does not mention NDT or the fact that Walker is not employed by MI.

57. The parties' Contract strictly forbids MI from subcontracting the work it was hired by DuPont to perform without DuPont's prior written consent. *See* Ex. A hereto, Para. 8 of General Site Conditions.

58. MI did not seek DuPont's consent before, or after, it subcontracted its obligations under the Contract to Walker and NDT.

59. At no time did DuPont consent to MI's decision to subcontract its obligations under the parties' Contract.

60. MI's unilateral decision to subcontract the performance of its obligations under the parties' Contract constitutes an independent breach of that Contract.

61. As a result of MI's breach of the terms of the Contract, DuPont has suffered additional damages to be determined at trial.

### COUNT VI:  FRAUD
### (SUBCONTRACTING)

62. DuPont repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63. By virtue of the parties' Contract, MI had a duty to disclose, and seek prior written consent for, its decision to subcontract its inspection obligations to Walker and NDT.

64. MI falsely and affirmatively represented that Walker was an MI employee while knowing that representation to be false.

65. MI falsely and affirmatively represented that it performed the pipeline inspection, while knowing that representation to be false.

66. MI falsely and affirmatively represented that it drafted the Inspection Report, while knowing that representation to be false.

67. MI was aware that DuPont would rely upon its misrepresentation that Walker was a MI employee and/or that it performed the inspection and/or that it drafted the Inspection Report, and, by failing to disclose the truth, MI intended to induce DuPont to refrain from objecting to the subcontracting arrangement.

68. Had DuPont known that MI would subcontract the inspection and/or drafting of the Inspection Report to NDT and/or Mike Walker, DuPont would not have retained MI.

69. As a result of its reliance on MI's fraud, DuPont has suffered additional damages to be determined at trial.

## COUNT VII: FRAUD
## (DEPRIVING DUPONT OF A REMEDY)

70. DuPont repeats and realleges paragraphs 1 through 69 above as if fully set forth herein.

71. DuPont acted in justifiable reliance on MI's fraud by filing this lawsuit against MI alone.

72. Had DuPont known of NDT's involvement, it would have named NDT and Mike Walker, individually, as defendants in this lawsuit as well.

73. MI's fraud has potentially deprived DuPont of recovery against NDT and/or Walker for their part in the inspection and Inspection Report.

74.    As a result of its reliance on MI's fraud, DuPont has suffered additional damages to be determined at trial.

## PRAYER FOR RELIEF

DuPont respectfully requests that this Court enter judgment in favor of DuPont, as follows:

(a)    against defendant MI for damages in the amount of at least $2,029,462.21;

(b)    against defendant MI for pre- and post-judgment interest on the sum of all damages awarded to DuPont against the defendant;

(c)    against defendant MI for punitive damages based on its reckless and/or intentional conduct in performing an inadequate inspection and issuing an inaccurate Inspection Report;

(d)    against defendant MI for punitive damages based on its fraudulent conduct in surreptitiously subcontracting its obligations under the Contract and continuing to misrepresent that Walker was an employee of MI;

(e)    against defendant MI for the fees and costs incurred in asserting this action, including attorneys' fees; and

(df)    such other and further relief the Court may deem just and proper.

Respectfully submitted,
POTTER ANDERSON & CORROON LLP

By: _____
    Kathleen Furey McDonough (I.D. # 2395)
    Sarah E. DiLuzio (I.D. # 4085)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, Delaware  19801
    Telephone: (302) 984-6000

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company*

Dated: ~~June 1,~~ **November 2,** 2007
~~790808~~**824992**v~~4~~**2**/20120-435

**Summary of deletions:**

Document comparison done by DeltaView on Friday, November 02, 2007
2:57:08 PM

| | |
|---|---|
| 1 | _____ |
| 69 | d |
| 71 | Respectfully submitted, |
| 72 | June 1, |
| 74 | 790808 |
| 76 | 4 |

Document comparison done by DeltaView on Friday, November 02, 2007 2:57:08 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://PAC/790808/4 |
| Document 2 | PowerDocs://PAC/824992/2 |
| Rendering set | PacGlobal |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | ")      C.A. No. _____ " changed to ")  C.A. No.  07-346 SLR" |
| 3 | Change | "COMPLAINT" changed to "AMENDED COMPLAINT" |
| 4 | Change | "and for its complaint against" changed to "and for its amended complaint against" |
| 5 | Insertion | (PERFORMANCE) |
| 6 | Insertion | COUNT V:    BREACH OF CONTRACT |
| 7 | Insertion | (SUBCONTRACTING) |
| 8-9 | Insertion | 48.    DuPont repeats and...fully set forth herein. |
| 10-11 | Insertion | 49.    On October 1, 2007,...Kentucky facility. |
| 12-13 | Insertion | 50.    MI's third party...Kentucky site. |
| 14-15 | Insertion | 51.    MI's third party...detrimentally relied. |
| 16-17 | Insertion | 52.    MI's motion for leave...the Inspection Report. |
| 18-19 | Insertion | 53.    MI's motion for leave...of NDT's |

| | | involvement. |
|---|---|---|
| 20-21 | Insertion | 54.    MI consistently...was an employee of MI. |
| 22-23 | Insertion | 55.    In its Initial...as an employee of MI. |
| 24-25 | Insertion | 56.    The 2004 Inspection...is not employed by MI. |
| 26-27 | Insertion | 57.    The parties' Contract...General Site Conditions. |
| 28-29 | Insertion | 58.    MI did not seek...to Walker and NDT. |
| 30-31 | Insertion | 59.    At no time did DuPont...the parties' Contract. |
| 32-33 | Insertion | 60.    MI's unilateral...breach of that Contract. |
| 34-35 | Insertion | 61.    As a result of MI's...be determined at trial. |
| 36 | Insertion | COUNT VI:    FRAUD |
| 37 | Insertion | (SUBCONTRACTING) |
| 38-39 | Insertion | 62.    DuPont repeats and...fully set forth herein. |
| 40-41 | Insertion | 63.    By virtue of the...to Walker and NDT. |
| 42-43 | Insertion | 64.    MI falsely and...to be false. |
| 44-45 | Insertion | 65.    MI falsely and...to be false. |
| 46-47 | Insertion | 66.    MI falsely and...to be false. |
| 48-49 | Insertion | 67.    MI was aware that...arrangement. |
| 50-51 | Insertion | 68.    Had DuPont known that...not have retained MI. |
| 52-53 | Insertion | 69.    As a result of its...be determined at trial. |
| 54 | Insertion | COUNT VII:  FRAUD |
| 55 | Insertion | (DEPRIVING DUPONT OF A REMEDY) |
| 56-57 | Insertion | 70.    DuPont repeats and...fully set forth herein. |
| 58-59 | Insertion | 71.    DuPont acted in...against MI alone. |
| 60-61 | Insertion | 72.    Had DuPont known of...in this lawsuit as well. |
| 62-63 | Insertion | 73.    MI's fraud has...and Inspection Report. |
| 64-65 | Insertion | 74.    As a result of its...be determined at trial. |
| 66 | Change | "intentional conduct;" changed to "intentional conduct in...Inspection Report;" |

| 67 | Insertion | (d)    against defendant MI...was an employee of MI; |
| 68 | Change | "against defendant" changed to "(e) against defendant" |
| 69-70 | Change | "(d)    such other" changed to "(f)   such other" |
| 71 | Deletion | Respectfully submitted, |
| 72-73 | Change | "Dated: June 1, 2007" changed to "Dated: November 2, 2007" |
| 74-75 | Change | "790808v" changed to "824992v" |
| 76-77 | Change | "v4/20120-435" changed to "v2/20120-435" |

| Statistics: | |
| --- | --- |
|  | Count |
| Insertions | 71 |
| Deletions | 6 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 77 |

16    DeltaView comparison of PowerDocs://PAC/790808/4 and PowerDocs://PAC/824992/2. Performed on 11/2/2007.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

E. I. DU PONT DE NEMOURS AND COMPANY,  )
)
)     C.A. No.  07-346 SLR
              Plaintiff,  )
)
    v.  )
)
MECHANICAL INTEGRITY, INC.,  )
)
             Defendant.  )

## ORDER

The Court, having considered Plaintiff's Motion for Leave to file its First Amended

Complaint, is of the opinion that the motion should be **GRANTED**.  The First Amended

Complaint is deemed filed and served as of the date of this Order.

SIGNED and ENTERED this _____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-346 SLR |
| v. | ) ) | |
| MECHANICAL INTEGRITY, INC., | ) ) | |
| Defendant. | ) ) | |

## LOCAL RULE 7.1.1 CERTIFICATION

Counsel for Plaintiff E.I. du Pont de Nemours and Company certifies that opposing

counsel was contacted in an effort to reach agreement on the matters set forth in this Motion.

Counsel were unable to reach agreement on the amendment requested.

POTTER ANDERSON & CORROON LLP

By: *Sarah E. DiLuzio*
Kathleen Furey McDonough (I.D. # 2395)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19801
Telephone: (302) 984-6000

*Attorneys for Plaintiff*
*E. I. du Pont de Nemours and Company*

Dated: November 2, 2007
828377/20120-435