# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

E.I. DU PONT DE NEMOURS AND
COMPANY,

        Plaintiff,

  v.

MECHANICAL INTEGRITY, INC.

        Defendant and
        Third Party Plaintiff,

  v.        .

NDT EQUIPMENT SERVICES LTD.

        Third Party Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 07-346 (SLR)

## REPLY BRIEF IN SUPPORT OF NDT EQUIPMENT SERVICES LTD.'S MOTION TO DISMISS

Dated: March 25, 2008

FISH & RICHARDSON P.C.

William J. Marsden, Jr. (#2247)
Brian M. Rostocki (#4599)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
Email: marsden@fr.com
Email: rostocki@fr.com

*Attorneys for NDT Equipment Services Ltd.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................4

      A.    The Contract Between DuPont And MI....................................................4

      B.    MI's Third Party Complaint Against NDT ..............................................6

III.  ARGUMENT ......................................................................................................8

      A.    NDT Is Not Bound By The Forum Selection Clause In
            DuPont's And MI's Contract And, Therefore, Is Not
            Subject To Jurisdiction In Delaware .......................................................8

      B.    NDT Is Not Collaterally Estopped From Denying Jurisdiction...........14

IV.   CONCLUSION...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*ABC Bus Leasing, Inc. v. Traveling In Style (TIS) Inc.,*
    2007 WL 2768292 (D. Miss. Sept. 18, 2007)....................................................17

*American Bureau of Shipping v. Tencara Shipyard S.P.A.,*
    170 F.3d 349 (2d Cir. 1999)............................................................................15

*Capital Group Cos., Inc. v. Armour,*
    2004 Del. Ch. LEXIS 159 (Del. Ch. Oct. 29, 2004)..............................15, 16, 17

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
    709 F.2d 190 (3d Cir. 1983).........................................................11, 12, 13, 14

*Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co.,*
    2007 WL 2891981 (N.D.N.Y. Sept. 28, 2007)..................................................14

*Hadley v. Shaffer,*
    2003 U.S. Dist. LEXIS 14106 (D. Del. Aug. 12, 2003) ...................9, 10, 11, 13

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas,*
    464 F.3d 514 (5th Cir. 2006) .........................................................................16

*Intergen N.V. v. Grina,*
    344 F.3d 134 (1st Cir. 2003).....................................................................14, 17

*Sternberg v. O'Neil,*
    550 A.2d 1105 (Del. 1987) ..............................................................................8

*Tate & Lyle Tech. Ltd. v. AIDP, Inc.,*
    2007 WL 2680969 (C.D. Ill. Aug. 28, 2007)....................................................8

*Thompson-CSF, S.A. v. American Arbitration Assoc.,*
    64 F.3d 773 (2d Cir. 1995)..............................................................................17

*Zurich Am. Ins. Co. v. Dawes Rigging & Crane Rental, Inc.,*
    2006 U.S. Dist. LEXIS 11039 (D. Mo. Mar. 17, 2006).....................................14

## I.    INTRODUCTION[1]

After MI filed its Third Party Complaint against NDT and Walker (D.I. 20), counsel for NDT and Walker called counsel for MI and wrote him a letter asking that MI voluntarily dismiss the Third Party Complaint against Walker individually, because Walker was merely a director of NDT and was not, as alleged, a sole proprietor doing business as NDT, and against both NDT and Walker, because NDT and Walker were not subject to personal jurisdiction in Delaware. Counsel for NDT and Walker requested in writing that MI's counsel voluntarily dismiss the Third Party Complaint by January 31, 2008.  MI's counsel failed to dismiss NDT and Walker within the time frame requested, necessitating the filing of the motion to dismiss on February 1, 2008 (D.I. 28-32).  Because there was no apparent factual basis to assert a claim against Walker individually, or to assert that either NDT or Walker was subject to personal jurisdiction in Delaware, counsel for NDT and Walker then put MI's counsel on notice that they would pursue a motion for sanctions if MI did not promptly dismiss the Third Party Complaint voluntarily. Although MI belatedly agreed to voluntarily dismiss Walker,[2] it refused to dismiss NDT, instead requesting an extension of time to respond to the motion, which was voluntarily granted by counsel for NDT.  MI then filed an opposition on March 5, 2008 (D.I. 45), which makes clear, as set forth below, that MI never had any factual basis on which to assert personal jurisdiction over NDT in Delaware.  In confirmation of this, on March 20, 2008, counsel for DuPont and MI filed a stipulation (using an incorrect caption that does not reflect the Third Party Complaint against NDT) agreeing to transfer their dispute to Kentucky.  Again MI's counsel did not have the courtesy to notify counsel for NDT that it had agreed with DuPont to file the stipulation

---

[1] Unless otherwise noted, the defined terms herein have been defined in the Opening Brief In Support Of NDT Equipment Services Ltd.'s And Mike Walker's Motion To Dismiss, filed with this Court on February 1, 2008 ("NDT Op. Br.").

[2] MI voluntarily dismissed Walker from the case on February 1, 2008 (D.I. 27), but because MI's counsel had not bothered to notify NDT that it would be filing the voluntary dismissal, NDT was put to the expense of filing a motion to dismiss on behalf of both Walker and NDT.

requesting transfer of the case to Kentucky, and neither DuPont nor MI asked NDT if it would join in the stipulation.  By the time the stipulation was served on NDT's counsel, NDT's reply brief and supporting declaration had already been drafted and sent to the UK for NDT's review and comment.  So once again, MI put NDT to the unnecessary expense of filing a brief on a motion that it has effectively conceded by filing the stipulation with DuPont agreeing to transfer the case to Kentucky. [3]  Under these facts, it is clear that the motion to dismiss should be granted.

MI does not dispute that NDT does not have "minimum contacts" with Delaware.  Nor does MI argue that jurisdiction over NDT is proper under Delaware's Long-Arm Statute or that NDT's lack of "minimum contacts" would satisfy a constitutional due process analysis.  Rather, MI argues that a due process analysis is not required because NDT consented to jurisdiction in Delaware by virtue of the forum selection clause in DuPont's and MI's contract, notwithstanding the fact that NDT was not a party to that contract.  *See* Mechanical Integrity Inc.'s Opening Brief In Response To NDT Equipment Services Ltd.'s and Mike Walker's Motion To Dismiss Third Party Complaint, filed with this Court on March 5, 2008 ("MI Op. Br.") at 3, 7-10.  However, the law is clear that a forum selection clause is only binding on a party to the contract or on a non-signatory who is an intended third party beneficiary of or closely related party to the contract containing the forum selection clause.  Neither exception applies here.

NDT was not a party to DuPont's and MI's contract.  NDT is also not an intended third party beneficiary of or closely related party to that contract.  NDT did not participate in the

---

[3] In their Joint Stipulation and Order to Transfer, DuPont and MI twice reference the possibility of bringing suit against Walker in his individual capacity.  (D.I. 47 at 2-3) ("Most importantly, however, Walker . . . may only be available for service of process in Kentucky . . . However, a separate lawsuit against Walker . . . would have to be filed by DuPont in the Western District of Kentucky.").  However, MI has voluntarily dismissed Walker from this case (D.I. 27), thereby conceding that a suit against Walker individually would be improper.  DuPont did not object to the voluntarily dismissal of Walker.  Moreover, when MI filed its Third Party Complaint in this Court, DuPont did not seek to add Walker or NDT, with whom it has no contractual relationship, to its Complaint.  Rather, DuPont moved to amend its Complaint against MI to allege an additional contractual breach and two fraud claims based on the alleged use of NDT to provide services under the contract without DuPont's written consent.

negotiation of DuPont's contract with MI, NDT was not provided with a copy of that contract, and the terms and conditions of that contract were never explained to NDT.  Further, DuPont's and MI's contract explicitly prohibited MI from subcontracting or delegating any work without DuPont's prior written consent, and MI did not seek and DuPont did not provide such consent.  Indeed, DuPont claims that it did not know of NDT's involvement until MI filed its Third Party Complaint.  These undisputed facts lead to the inescapable conclusion that NDT was not an intended third party beneficiary of or closely related party to DuPont's and MI's contract.

MI argues in the alternative that NDT is estopped from denying jurisdiction because NDT directly benefited from DuPont's and MI's contract.  *Id.* at 3, 10-11.  This argument also fails because NDT has not knowingly embraced or exploited the contract between DuPont and MI, and NDT did not directly benefit from that contract.  Unlike the cases cited by MI, NDT never saw a copy of DuPont's contract with MI until this litigation was filed, and was not aware of the terms and conditions of that contract.  NDT has also not sought to enforce that contract through litigation or otherwise.  And, any benefit MI alleges flowed to NDT was an indirect benefit of the contract between DuPont and MI.  NDT's right to payment arose from NDT's alleged "oral contract" with MI, not DuPont's contract with MI.  Thus, NDT is not estopped from raising its personal jurisdiction defense.[4]

Accordingly, this Court should dismiss MI's Third Party Complaint.

---

[4] Prior to March 5, 2008, MI represented that it attempted to perfect service of process on NDT and Walker through a request for waiver of service, which was rejected by NDT and Walker, and through Delaware's Long-Arm Statute, which was procedurally deficient for the reasons stated in NDT's opening brief.  *See* NDT Op. Br. at 2, 4-5, 15-17.  For the first time in its opposition brief, MI states that it has attempted to perfect service through the Hague Convention.  *See* MI Op. Br. at 2, 12-13.  To the extent MI can show that it has properly perfected service through the Hague Convention, NDT will withdraw its motion insofar as it is based on insufficient service of process.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

NDT hereby incorporates by reference the factual background set forth at pages 1 and 3-5 of its opening brief in support of its motion to dismiss, filed with this Court on February 1, 2008. (D.I. 29).  Significantly, MI does not dispute any of the facts submitted by NDT related to NDT's lack of contacts with Delaware, nor does MI seek to challenge these facts through jurisdictional discovery.  Instead, MI sets forth background "facts" that are not relevant to the instant motion.  NDT disputes certain of the "facts" submitted in MI's opposition to NDT's motion to dismiss as briefly discussed below.  (D.I. 45).

### A.    The Contract Between DuPont And MI

DuPont and MI apparently entered into a contract on or about February 2, 2004, whereby MI was to perform a "guided wave" ultrasound inspection on pipeline used to carry chloroform to DuPont's Louisville, Kentucky facility.  (D.I. 1 at 2 and D.I. 45 at 3-4).  DuPont's and MI's contract contained a forum selection clause whereby ***DuPont and MI*** consented to "submit exclusively to the jurisdiction and service of process of the courts of the State of Delaware or the courts of the United States located in Delaware."  (D.I. 1, Exhibit A and D.I. 45, Exhibits E and F).  NDT, however, was not a party to this contract or any other contract that obligated it to consent to jurisdiction in Delaware.  *See* Brimfield Dec. at ¶ 16; Supplemental Declaration of Mike Walker ("Walker Supp. Dec.") at  ¶¶ 3, 8, filed herewith.  NDT did not participate in the negotiation of the contract between DuPont and MI.  *See* Walker Supp. Dec. at ¶ 5.  Further, neither DuPont nor MI ever provided NDT with a copy of their contract or notified NDT in any other way of the terms and conditions of their contract, including the forum selection clause.  *Id.* at ¶¶ 4, 6.  In fact, MI admits that it has no evidence that NDT was ever given a copy of MI's contract with DuPont.  (D.I. 45 at 4 (MI states: "It is unknown whether NDT and/or Mike

Walker, as a director and/or employee of NDT, was ever given a copy of the contract between DuPont and Mechanical Integrity.").

MI has submitted an affidavit from its representative Mike Sens ("Sens"), which is more significant for what it does not say than for what it says.  The affidavit acknowledges that initial discussions with NDT regarding the Louisville, Kentucky pipeline were between Walker and MI's late founder John McMillan ("McMillan").  *See* MI Op. Br., Exhibit G at ¶ 5.  Sens' affidavit does not say that NDT was provided with a copy of the contract between DuPont and MI.  *Id.* at ¶ 6 ("I have no knowledge as to whether Mr. McMillan ever provided NDT and/or Mike Walker a copy of the DuPont contract . . . .").  Sens' affidavit instead resorts to sweeping generalities:  "at minimum the terms of the contract were conveyed to Walker *in that Walker knew what was required of the inspection*."  *Id.*  (emphasis added).  This wholly uncorroborated general statement falls far short of establishing that NDT was advised of the terms of MI's contract with DuPont, much less of the forum selection clause of that contract.  In fact, NDT and Walker believed that they were simply performing a demonstration or trial of NDT's ultrasound screening equipment at the DuPont facility, and this has been subsequently confirmed by MI and Sens.  *See* Walker Supp. Dec. at ¶ 10 and Exhibit A.  Moreover, neither DuPont nor MI ever explained or provided to NDT the terms and conditions of their contract.  *Id.* at ¶¶ 4, 6.  When Walker was on-site at DuPont's Louisville, Kentucky facility, a DuPont representative merely told Walker where NDT could perform a demonstration of NDT's ultrasound screening equipment on the pipeline.  *Id.* at ¶ 11.  These facts do not begin to support MI's contention that NDT was aware of the terms and conditions of DuPont's and MI's contract.  Nor do they provide any support for MI's contention that NDT is subject to jurisdiction in Delaware.

Moreover, DuPont's and MI's contract contained an additional provision whereby MI was prohibited from subcontracting or delegating any work without DuPont's prior written consent. (D.I. 1, Exhibit A at 2 and D.I. 45, Exhibit F at 2). Specifically, the contract stated:

> Supplier's [MI's] obligations hereunder shall be performed solely by employees of Supplier [MI]. Supplier [MI] shall not, without DuPont's prior written consent, subcontract or delegate performance of any of its obligations hereunder. Supplier [MI] shall be fully responsible for the performance of any such subcontractor or agents. Supplier [MI] will not, directly, indirectly or via subcontractors or agents, provide any services from locations outside the United States without the prior written consent of DuPont.

(*Id.*). DuPont apparently "gave no such permission and, indeed, did not even know of NDT's involvement until MI filed its proposed Third Party Complaint." (D.I. 21 at 1). As a result, DuPont has moved to amend its Complaint to add another breach of contract claim and additional fraud claims based on MI's failure to provide written notice to DuPont that MI purportedly delegating some of the work under the contract to NDT. (D.I. 21).[5] Thus, NDT was not a party to DuPont's and MI's contract, had no knowledge of that contract's terms and conditions, and cannot be considered an intended third party beneficiary of or closely related party to that contract. Accordingly, NDT is not be subject to jurisdiction in Delaware.

### B.    MI's Third Party Complaint Against NDT

After MI filed its Third Party Complaint against NDT and Walker (D.I. 20), on January 3, 2008, counsel for NDT and Walker requested that MI voluntarily dismiss the Third Party Complaint against Walker individually, because Walker was merely a director of NDT and was not, as alleged, a sole proprietor doing business as NDT. *See* Rostocki Dec., Exhibit C. Counsel for NDT and Walker also requested that MI voluntary dismiss its Third Party Complaint against

---

[5] In its proposed Amended Complaint, DuPont states that MI's initial disclosures filed pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure identified Walker as an employee of MI. (*Id.*). This was a false and misleading representation by MI, because Walker is a director of NDT, and MI knew that Walker was never an employee of MI. *See* Walker Dec. at ¶ 3.

both NDT and Walker, because NDT and Walker had no contacts with Delaware that would subject them to the jurisdiction of Delaware's courts. *Id.* On January 23, 2008, MI responded that it would be willing to dismiss Walker if Walker confirmed that his actions taken at the DuPont facility were performed in his capacity as an NDT director. *See* Rostocki Dec., Exhibit D. MI also requested that NDT consent to jurisdiction in Delaware even if NDT were successful on its personal jurisdiction defense. *Id.* On January 30, 2008, counsel for NDT and Walker provided MI with a copy of Walker's Declaration, wherein Walker declared, among other things, that he is a resident of the UK, he is a director of NDT, and has never been the sole proprietor of NDT. Counsel for NDT and Walker refused to consent to jurisdiction in Delaware, and renewed its request that MI dismiss its Third Party Complaint. *See* letter from Brian M. Rostocki, Esquire to Louis J. Rizzo, Esquire, dated January 30, 2008, attached as Exhibit E to the Rostocki Dec. filed herewith.

MI did not dismiss either NDT or Walker by January 31, 2008, as requested. Nor did counsel for MI contact counsel for NDT and Walker by that date to advise them that MI would dismiss Walker voluntarily in light of Walker's Declaration. As a result, on February 1, 2008, NDT and Walker filed the instant motion to dismiss. (D.I. 28). Counsel for NDT and Walker again requested that MI voluntarily dismiss NDT and Walker because MI had produced no facts to support an assertion of personal jurisdiction over NDT or Walker. *See* letter from William J. Marsden, Jr., Esquire to Louis J. Rizzo, Jr., dated February 1, 2008, attached as Exhibit F to the Rostocki Dec. filed herewith. That same day, MI voluntarily dismissed Walker from the case. (D.I. 27). Therefore, the only party remaining relevant to the instant motion to dismiss is NDT.

## III.    ARGUMENT

MI concedes that NDT lacks any meaningful contacts with Delaware that would subject NDT to jurisdiction in Delaware.  MI does not dispute the facts submitted regarding NDT's lack of any contacts with Delaware.  MI has also not sought jurisdictional discovery to challenge the facts submitted by NDT.  *See Tate & Lyle Tech. Ltd. v. AIDP, Inc.*, 2007 WL 2680969, at *5 (C.D. Ill. Aug. 28, 2007) (refusing to order jurisdictional discovery when  plaintiffs "did not expressly request the court to grant plaintiffs leave to perform it.").  Instead, MI rests its opposition to the motion on two faulty arguments.  MI first argues that NDT is bound by the forum selection clause in DuPont's contract with MI because NDT is "closely related to the contract and the claims arise from such contract."  *See* MI Op. Br. at 3, 7-10.  Alternatively, MI argues that "NDT should be equitably estopped from denying jurisdiction because they directly benefited from the DuPont and [MI] contract."  *Id.* at 3, 10-11.  Both of these arguments are without merit and should be rejected as a basis for this Court asserting jurisdiction over NDT.

### A.    NDT Is Not Bound By The Forum Selection Clause In DuPont's And MI's Contract And, Therefore, Is Not Subject To Jurisdiction In Delaware

Under Delaware law, parties may, under certain circumstances, contractually consent to jurisdiction in a given forum.  *See Sternberg v. O'Neil*, 550 A.2d 1105, 1109 (Del. 1987).  Here, NDT was not a party to the contract between DuPont and MI, and NDT did not enter into any other contract whereby it consented to jurisdiction in Delaware.  (D.I. 1, Exhibit A and D.I. 45, Exhibits E and F).  *See also* Brimfield Dec. at ¶ 16; Walker Dec. at ¶ 13; Walker Supp. Dec. at ¶¶ 3, 8. Rather, MI argues that NDT is bound by the forum selection clause in DuPont's contract with MI.  *See* MI Op. Br. at 2, 4-5, 15-17.  MI's argument is that NDT, as a non-signatory to that contract, may nonetheless be bound by the forum selection clause contained in the DuPont and MI contract, if that forum selection clause is valid, NDT is closely related to that contract, and

the claims against NDT relate to that contract. *Id.* However, the cases relied upon by MI in

support of this argument are both factually and legally distinguishable. Because there is no other

cognizable basis for subjecting NDT to jurisdiction in Delaware, the third-party complaint must

be dismissed.[6]

MI's reliance on *Hadley v. Shaffer*, 2003 U.S. Dist. LEXIS 14106 (D. Del. Aug. 12,

2003) is misplaced. In *Hadley*, the underlying contract was a merger agreement between

StatesRail L.L.C. ("StatesRail") and Kiamichi Railroad Company ("Kiamichi"). *Id.* at *1.

Before the merger, Kiamichi was a closely held corporation with only sixteen shareholders, and

Jack Hadley ("J. Hadley") and his wife were the majority shareholders of Kiamichi. *Id.* at *2.

Pursuant to the merger agreement, Kiamichi created a subsidiary called Kiamichi Acquisition,

L.L.C. ("KRR Acquisition"), and KRR Acquisition acquired Kiamichi's stock and Kiamichi

ceased to exist. *Id.* Upon the closing of the merger, $1.4 million of the total purchase price was

placed in an escrow account by the parties for indemnification purposes and those funds not paid

to StatesRail as indemnity payments were to be disbursed to former Kiamichi shareholders under

the terms of the merger agreement. *Id.* J. Hadley was initially appointed as the Shareholder

Representative to administer the claims asserted by the third party plaintiffs, but Thomas J.

Hadley ("T. Hadley") later assumed that position. *Id.* at *3

Following the merger, StatesRail filed a lawsuit in Texas against T. Hadley, in his

capacity as the Shareholder Representative, alleging that J. Hadley had failed to release

indemnity payments to StatesRail in accordance with the merger agreement. *Id.* T. Hadley filed

a motion to dismiss, claiming that a mandatory forum selection clause in the merger agreement

provided that the Delaware courts had exclusive jurisdiction and therefore the Texas court lacked

---

[6] NDT does not dispute the validity of the forum selection clause as its relates to DuPont or MI; however, the forum selection clause is not applicable to NDT.

jurisdiction. *Id.* That motion to dismiss was granted. *Id.* Shortly thereafter, T. Hadley, in his capacity as the Shareholder Representative, filed a lawsuit in an Oklahoma state court alleging various breaches of the merger agreement, claiming to be a third party beneficiary under the merger agreement. *Id.* The third party plaintiffs removed the suit to federal court and subsequently requested and obtained a change of venue to the United States District Court for the District of Delaware, based on the forum selection clause in the merger agreement. *Id.* at *4. The third party plaintiffs then filed a counterclaim and third party complaint against T. Hadley and J. Hadley (collectively, the "Hadleys"), disputing the ownership of certain life insurance policies related to the merger agreement. *Id.* The Hadleys moved to dismiss the claims asserted against them for lack of personal jurisdiction. *Id.* at *4. The Hadleys argued, in part, that they are not bound by the merger agreement's forum selection agreement, which provided Delaware's courts with exclusive jurisdiction. *Id.* at *6-*7.

The court held that the Hadleys were subject to jurisdiction in Delaware based on the merger agreement's forum selection clause, notwithstanding that the Hadleys were not parties to the merger agreement. *Id.* at *13-*19. The court reasoned that the Hadleys were intended third party beneficiaries of the merger agreement and for the same reason were considered to be closely related to the merger agreement. *Id.* However, the court based its holding solely on the following facts that are not present in this case:

- As consideration for the sale of their Kiamichi shares, the merger agreement provided that the shareholders (including the Hadleys) would receive certain payments. *Id.* at *15. In contrast, the DuPont and MI contract did not contemplate any payment to NDT and, in fact, prohibited MI from subcontracting any work without DuPont's prior written consent. (D.I. 1, Exhibit A and D.I. 45, Exhibits E and F). DuPont has acknowledged that MI never sought its consent and DuPont never provided such consent to MI and "did not even know of NDT's involvement until MI filed its proposed Third Party Complaint." (D.I. 21 at 1).

- The merger agreement required approval by the Hadleys and other shareholders and the Hadleys consented to the merger. 2003 U.S. Dist. LEXIS 14106, at *15. In contrast, the DuPont and MI contract did not require NDT's approval or the approval of any other third party for that matter. Further, the DuPont and MI contract was never disclosed to NDT, and the terms of that contract were never explained to NDT. *See* Walker Supp. Dec. at ¶¶ 4, 6. Here, there is no evidence that NDT was given a copy of MI's contract with DuPont and, indeed, the sworn evidence is to the contrary. *See* MI Op. Br. at 4 and Exhibit G.

- J. Hadley and his wife were majority shareholders of Kiamichi, owning approximately 60% of its shares and, therefore, were intended third party beneficiaries of or closely related to the merger agreement. 2003 U.S. Dist. LEXIS 14106, at *15-*16. In contrast, NDT is a wholly-owned subsidiary of Mencol Ltd. and does not have any ownership interest in MI or DuPont. *See* Brimfield Dec. at ¶ 5.

- J. Hadley was actively involved in the negotiations that led to the merger agreement. 2003 U.S. Dist. LEXIS 14106, at *16. In contrast, NDT took no part in the negotiation of the terms and conditions of the contract between DuPont and MI. *See* Walker Supp. Dec. at ¶ 5. NDT was not even aware of the terms and conditions of DuPont's and MI's contract until this litigation. *Id.* at ¶¶ 4, 6.

- T. Hadley obtained dismissal of the Texas lawsuit based on the merger agreement's forum selection clause that provided Delaware's courts with exclusive jurisdiction but then filed the lawsuit in Oklahoma court on the theory that he was a third party beneficiary of the merger agreement. 2003 U.S. Dist. LEXIS 14106, at *16-*17. The court stated that T. Hadley "used his third-party beneficiary status to his benefit by seeking compensation for alleged breaches of the [m]erger [a]greement" and now seeks to avoid the burdens of the merger agreement's forum selection clause. *Id.* at *17. In contrast, MI is seeking to drag NDT into its contractual dispute with DuPont in a forum that MI apparently contractually agreed to, but with which NDT has absolutely no contacts. *See* Walker Supp. Dec. at ¶ 9.

In light of these numerous and material factual differences, *Hadley* provides no support for MI's argument. Therefore, NDT cannot be considered an intended third party beneficiary of or closely related to the contract between DuPont and MI and is not bound by that contract's forum selection clause.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983) is similarly inapposite. In that case, a New Jersey company, Coastal Steel Corporation ("Coastal"), entered into a contract with Sir James Farmer Norton & Co., Ltd. ("Farmer Norton"), a British

11

corporation, to build a steel working plant in New Jersey. *Id.* at 192. To fulfill that contract, and *at Coastal's suggestion*, Farmer Norton contracted with Tilghman Wheelabrator Limited ("Tilghman") for the purchase of a blast unit. *Id.* The contract between Farmer Norton and Tilghman contained a forum selection clause which named England as the appropriate forum. *Id.* at 192-93. While in bankruptcy, Coastal filed suit against, among others, Farmer Norton, Tilghman, and its American parent alleging breach of the Farmer Norton-Tilghman contract. *Id.* at 193. The bankruptcy court and district court denied Tilghman's motion to dismiss, refusing to enforce against Coastal the forum selection clause designating England as the appropriate forum. *Id.* The Third Circuit reversed, holding that Coastal, a non-signatory to the Farmer Norton-Tilghman contract, was an intended third party beneficiary of that contract and, thus, was bound by the forum selection clause contained therein. *Id.* at 202-204.

The Third Circuit reasoned that "Coastal chose to do business with Farmer Norton, an English firm, *knowing* that Farmer Norton would be acquiring components from other English manufacturers. Thus it was perfectly *foreseeable* that Coastal would be a third-party beneficiary of an English contract, and that such a contract would provide for litigation in an English court." *Id.* at 203. That is, by doing business with Farmer Norton knowing that Farmer Norton would contract with Tilghman in order to fulfill the underlying contract with Coastal, the Third Circuit found that Coastal was an *intended* third party beneficiary of the Farmer Norton-Tilghman contract. *Id.* The Third Circuit also reasoned that Coastal could not avoid the forum selection clause in the Farmer-Norton-Tilghman contract *when Coastal also sued for breach of that very contract*. *Id.* at 202-04.

The facts of this case are plainly distinguishable from those in *Coastal Steel Corp.* Unlike Coastal, NDT has not asserted any claim based on DuPont's contract with MI or

otherwise embraced that contract.  On the contrary, NDT was unwillingly and wrongfully

brought into this litigation by MI's Third Party Complaint.  *See BDO Seidman, LLP v. Kader*

*Holdings Co., Ltd.*, 2005 Phila. Ct. Com. Pl. LEXIS 140, at *8 (Phila. Ct. Com. Pl. Mar. 11,

2005) (distinguishing *Coastal* where the alleged third party beneficiary did not bring the suit in

question, finding that in *Coastal* the Third Circuit only "recognized that 'the law of contracts'

does not allow third party beneficiaries to avoid 'contractual provisions otherwise enforceable'"

because the third party beneficiary brought litigation under the contract in question).

Tellingly, MI does not even argue that NDT was an intended third party beneficiary of

the contract between DuPont and MI.  Nor could MI make such an argument.  To qualify as a

third party beneficiary of a contract under Delaware law, the following test must be satisfied: (i)

"the contracting parties must have intended that the third party beneficiary benefit from the

contract;" (ii) "the benefit must have been intended as a gift or in satisfaction of a pre-existing

obligation;" and (iii) "the intent to benefit the third party must be a material part of the parties'

purpose in entering into the contract."  *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc*

*Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001).  *See also Hadley*, 2003

U.S. Dist. LEXIS 14106, at *13-*14 ("To qualify as a third-party beneficiary, it must be shown

that the contract was made for the benefit of that third party within the intent and contemplation

of the contracting parties.") (internal quotations and citations omitted).  This test cannot be met

in this case, because DuPont and MI certainly did not intend for their contract to benefit NDT.

The contract explicitly prohibited MI from subcontracting any work without DuPont's prior

written consent, which was never sought by MI and was never provided by DuPont.  *See supra* at

6 (citing D.I. 1, Exhibit A; D.I. 45, Exhibits E and F; D.I. 21).

Accordingly, NDT cannot be considered an intended third party beneficiary of DuPont's and MI's contract. For the same reasons, NDT cannot be considered a closely related party to that contract because it was not foreseeable that NDT would be bound by that contract, especially given that NDT never received a copy of the contract, played no role in negotiating that contract, and never had the terms and conditions of the contract disclosed or explained to it in any other manner. *See Coastal Steel Corp.*, 709 F.2d at 203. *See also Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, 2007 WL 2891981, at *8 (N.D.N.Y. Sept. 28, 2007) ("the non-signatory may be . . . bound by the clause if the non-signatory is closely related . . . such that it becomes foreseeable that it will be bound.") (internal quotations and citations omitted). NDT is therefore not subject to jurisdiction in Delaware under the forum selection clause contained in DuPont's and MI's contract. *See Zurich Am. Ins. Co. v. Dawes Rigging & Crane Rental, Inc.*, 2006 U.S. Dist. LEXIS 11039, at *5-*6 (D. Mo. Mar. 17, 2006) (refusing to bind a non-signatory to a contract's forum selection clause because the non-signatory was not a third party beneficiary of or closely related party to the contract).

### B.    NDT Is Not Collaterally Estopped From Denying Jurisdiction

As an alternative ground for this Court to assert jurisdiction over NDT, MI argues that NDT is estopped from arguing that it is not bound by the forum selection clause in DuPont's and MI's contract. (MI Op. Br. at 10). However, the cases MI cites in support of its collateral estoppel argument are plainly distinguishable from the facts of this case.

"[T]he doctrine of collateral estoppel precludes a party from enjoying the rights and benefits under a contract while at the same time avoiding its burdens and obligations." *See Intergen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). "Although federal courts generally have been willing to estop a signatory from avoiding" arbitration or litigation "with a nonsignatory when the issues the nonsignatory is seeking to resolve in" arbitration or litigation

"are intertwined with the agreement that the estopped party has signed, . . . [federal courts] have been hesitant to estop a nonsignatory seeking to avoid" an arbitration or litigation. *Id.* (internal quotations and citations omitted). That is precisely the situation here, as NDT seeks to avoid becoming entwined in litigation in Delaware, a forum with which it has no contacts. In *Capital Group Cos., Inc. v. Armour*, 2004 Del. Ch. LEXIS 159 (Del. Ch. Oct. 29, 2004), another case erroneously relied on by MI, the court recognized that the cases applying the collateral estoppel doctrine in such cases are limited to "non-signatories who, during the life of the contract, have ***embraced*** the contract despite their non-signatory status but then, during litigation, attempt to repudiate the forum selection clause in the contract." *Id.* at *29 (emphasis added). *See also Intergen N.V.*, 344 F.3d at 146 (same). That is, the non-signatory to a contract can only be bound by the contract's forum selection clause "when the non-signatory ***knowingly exploits*** the agreement" containing the forum selection clause despite having never signed the contract. *See E.I. Du Pont de Nemours & Co.*, 269 F.3d at 199 (emphasis added).

For NDT to have knowingly embraced or exploited the contract between DuPont and MI, NDT would be required to have knowledge of that contract's terms and condition. Indeed, in the cases relied upon by MI, the non-signatories that were held to be bound by a contract's forum selection clause all received copies of and had knowledge of the underlying contract's terms. In *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349 (2d Cir. 1999), for example, the Second Circuit held that a group of yacht owners (non-signatories to the underlying contract containing the arbitration clause) were estopped from denying the contract containing an arbitration clause, where the yacht owners "received a copy of the" contract and received direct benefits from that contract. *Id.* at 351, 353. Here, NDT never received a copy of the DuPont and MI contract until it was brought into this litigation. *See* Walker Supp. Dec. at ¶¶ 4, 6. Nor were

the terms and conditions of the contract previously disclosed or explained to NDT in any other

manner.  *Id.*  Because NDT had no knowledge of the terms and conditions of the contract

between DuPont and MI, NDT could not, and did not, embrace or knowingly exploit that

contract.

　　*Capital Group Cos., Inc.* is also inapposite.  There the Court of Chancery denied a

trustee's motion to dismiss claims brought against her in her capacity as trustee and individually.

2004 Del. Ch. LEXIS 159, at *2.  The Court of Chancery found, in part, that the defendant

trustee was collaterally estopped from disclaiming the forum selection clause contained in the

underlying stock restriction agreement to which the trust was a party (but the defendant trustee

was not a signing party).  The Court of Chancery reasoned that the defendant trustee was

simultaneously in a divorce action in California "trying to assert a contractual right [under the

stock restriction agreement], namely, an ownership interest in stock held in the trust, while

disclaiming a contractual burden, namely, the forum selection clause" contained in the

underlying stock restriction agreement in the Court of Chancery action.  *Id.* at *20-*21.  The

Court of Chancery also reasoned that the defendant was aware of the underlying stock restriction

agreement entered into by the trust and, in fact, signed a joinder agreement wherein the

defendant, in her capacity as trustee, agreed to be bound by the underlying stock restriction

agreement, which contained the forum selection clause.  *Id.* at *6-*7.  No such facts support MI's

arguments here.  NDT has not sought to enforce through litigation or otherwise any aspect of the

contract between DuPont and MI.  *See* Walker Supp. Dec. at ¶ 9.  *See also Hellenic Inv. Fund,*

*Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (distinguishing cases where the

non-signatory has not sued the signatory under the underlying agreement and recognizing that

only in such situations will "the courts seriously consider applying direct benefits estoppel.")

(internal quotations omitted).  NDT has appeared in this case solely to contest personal jurisdiction in response to MI's Third Party Complaint.  Moreover, unlike the defendant trustee in *Capital Group Cos., Inc.*, NDT has never agreed to be bound by the contract between DuPont and MI.  *See* Brimfield Dec. at ¶ 16; Walker Supp. Dec. at ¶ 7.

Moreover, any benefits MI alleges flowed to NDT – namely, compensation for the inspection, further testing NDT's ultrasound screening technology at the DuPont facility, and the opportunity to build its relationship with MI – certainly did not arise directly from the contract between DuPont and MI, but instead arose by virtue of the alleged "oral contract" between MI and NDT.  Courts have consistently found that such indirect benefits are insufficient to invoke the collateral estoppel doctrine.  *See, e.g., ABC Bus Leasing, Inc. v. Traveling In Style (TIS) Inc.*, 2007 WL 2768292, at *11 (D. Miss. Sept. 18, 2007) (finding that ABC Leasing is not required to submit its claims, as to the TIS Defendants, to arbitration, under the collateral estoppel doctrine, where the benefits flowing to ABC Leasing in the form of monetary payments did not directly arise from the agreement between ABC Bus and the TIS Defendants (which contained the applicable arbitration provision) but, rather from the agreement between ABC Leasing and the TIS Defendants); *Thompson-CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773,776 (2d Cir. 1995) (finding that indirect benefits are insufficient to invoke collateral estoppel against a non-signatory); *E.I. DuPont de Nemours & Co.*, 269 F.3d at 200 (refusing to compel DuPont, a non-signatory to the agreement containing the arbitration clause, to submit to arbitration under the collateral estoppel doctrine, because DuPont did not receive any direct benefit under the underlying agreement); *Intergen N.V.*, 344 F.3d at 146-47 (refusing to compel arbitration against a non-signatory under the collateral estoppel doctrine where the non-signatory did not embrace or seek to receive direct benefits under the underlying contract).

Accordingly, NDT should not be estopped from raising its personal jurisdiction defense.

## IV.    CONCLUSION

For the reasons set forth above and in NDT's opening brief, NDT respectfully requests that this Court dismiss MI's Third Party Complaint.

Dated:  March 25, 2008                FISH & RICHARDSON P.C.

                                    By:    */s/ William J. Marsden, Jr.*
                                          William J. Marsden, Jr. (#2247)
                                          Brian M. Rostocki (#4599)
                                          919 N. Market Street, Suite 1100
                                          P.O. Box 1114
                                          Wilmington, DE 19899
                                          Telephone: (302) 652-5070
                                          Facsimile: (302) 652-0607
                                          Email:  marsden@fr.com
                                          Email:  rostocki@fr.com

                                    *Attorneys for NDT Equipment Services Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2008, I electronically filed with the Clerk of Court the

foregoing. REPLY BRIEF IN SUPPORT OF NDT EQUIPMENT SERVICES LTD.'S

MOTION TO DISMISS using CM/ECF which will send electronic notification of such filing(s)

to the following Delaware counsel.

Sarah Elizabeth DiLuzio
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE  19801

Louis J. Rizzo, Jr.,
Reger Rizzo Kavulich & Darnall, LLP
1001 Jefferson Plaza
Suite 202
Wilmington, DE 19801

/s/ Brian M. Rostocki
Brian M. Rostocki (#4599)